UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRACY DAVIS, individually, and SCHYLER HARRIS, by and through his next friend, TRACY DAVIS,<br><br>　　　Plaintiffs,<br><br>　v.<br><br>TIFFANY THOMAS, individually and in her capacity as a Special Education teacher and employee of RCPS,<br><br>　　　Defendant. | CIVIL ACTION NO.<br>1:20-cv-01062-JPB |

## ORDER

This matter is before the Court on Defendant Tiffany Thomas' ("Thomas")

Motion to Dismiss (ECF No. 13) and Plaintiffs Tracy Davis and Schyler Harris'

(collectively "Plaintiffs") Motion to File Out of Time Response and Excess Pages

("Motion to Respond") (ECF No. 20).  Having reviewed and fully considered the

papers filed therewith, the Court finds as follows:

### I.    PROCEDURAL HISTORY

This case has a significant history before the Court.  On or about February

28, 2017, Plaintiffs filed a complaint against the Rockdale County School District

("RCSD") and the principal and certain staff members of Shoal Creek Elementary

School ("Shoal Creek") concerning an incident involving Plaintiff Schyler Harris

("Harris").  The Complaint alleged that Harris, a special needs student, was injured as a result of punishment he received at the school during the 2015-2016 academic year.

In an order dated November 30, 2017, the Court dismissed all claims against the RCSD, the principal of Shoal Creek and several staff members on various grounds, including the doctrines of sovereign and official immunity and for failure to state a claim.  Three defendants, including Thomas, thereafter remained.

Thomas was dismissed from the case in October 2018, as a result of Plaintiffs' own motion.  By the end of 2018, Antonio Cammon ("Cammon") was the only remaining defendant.  Default judgment and a money judgment in the amount of $267,140.02 were entered against Cammon in 2020.

Plaintiffs filed a separate action with a virtually identical complaint against Thomas in April 2019, but that action was ultimately dismissed because Plaintiffs failed to serve Thomas despite being given multiple opportunities to do so.  The instant action against Thomas was filed in March 2020 as a "renewed" action.  The Complaint in this action is also virtually identical to the previously filed complaints, and Plaintiffs allege the same claims against Thomas both individually and in her capacity as a teacher in the RCSD.

The RCSD moved to dismiss the official capacity claims against Thomas in light of the Court's prior resolution of those claims.[1]  That motion was granted in July 2020.

Thomas seeks to dismiss the individual capacity claims against her on several bases, including because Plaintiffs' claims are barred by the statute of limitations and the doctrines of official and qualified immunity.  Plaintiffs did not file a timely response to Thomas' Motion to Dismiss.  Plaintiffs response was due on July 9, 2020, and even though they informed the Court on July 8, 2020, that they intended to respond to the Motion to Dismiss, they did not file their response until July 13, 2020, *after* the motion was submitted to the Court.  Plaintiffs concurrently filed their Motion to Respond, in which they asserted that they assumed they had twenty one days to respond to the Motion to Dismiss because they "believed" that their response "qualified as a response to [a] [m]otion for [s]ummary [j]udgment[, given that] [a] [Rule] 12[(b)] [m]otion to [d]ismiss is [d]ispositive in [n]ature."  They also informed the Court that they "require[d] [six] additional pages in order to complete the needed analysis."

---

[1] The Court notes that, as has been the pattern throughout this litigation, Plaintiffs' response to the RCSD's motion was untimely.

In order to move this case to an efficient resolution, especially in light of its long procedural history, and because Thomas has not objected to the Motion to Respond, the Court will consider Plaintiffs' untimely response to the Motion to Dismiss.  *See* N.D. Ga. Civ. R. 7.1(B) ("Failure to file a response shall indicate that there is no opposition to the motion."); *Puhy v. Delta Air Lines, Inc.*, 833 F. Supp. 1577, 1578 n.1 (N.D. Ga. 1993) (reflecting that courts will exercise their "discretion to waive a local rule requirement" when "the interests of justice and efficient disposition" of the matter requires it).  Accordingly, Plaintiffs' Motion to Respond (ECF No. 20) is **GRANTED**.  However, the Court will not consider any further late-filed papers or pleadings that otherwise contravene the rules of this Court.

## II.    BACKGROUND

As set forth in the Complaint, Plaintiff Tracy Davis ("Davis"), Harris' guardian, received a call from Shoal Creek on the morning of April 28, 2016, notifying her that there had been an incident at the school involving Harris.  Davis was, however, told that Harris was calm, and everything was fine.

Plaintiffs allege that when Davis arrived home that evening, Harris told her a different story.  He explained that Defendant Cammon, a paraprofessional at the school, was called to the classroom because he was kicking his book bag across the

floor.  Cammon intervened by picking Harris up (apparently from the floor), in the process of which Harris' head struck a desk and "almost 'cracked open.'" Cammon then hung Harris on the chalk board by his belt loop.  Davis examined Harris' head that evening but did not observe any bruises.

Plaintiffs further assert that Davis met with the school's principal the next morning to discuss the incident, and he admitted that he saw Harris hanging from the chalkboard when he entered the classroom.  He instructed Cammon to take Harris down from the board.  The principal later disclosed to investigators that the teachers and other students were laughing at Harris as he hung from the chalkboard.

As alleged in the Complaint, Cammon explained in a written statement to the Rockdale County Sheriff's Department that Harris was on the floor screaming and was being defiant with his teacher when Cammon entered the classroom. Cammon then picked Harris off the floor and took him to the board to "elevate him."  Cammon stated that this was the "normal procedure" to calm Harris down.

Thomas was Harris' teacher at the time of the incident, and Plaintiffs assert that her initial statement to investigators did not reveal that Harris was hung on the chalkboard.  She later stated that she observed Harris' belt loop catch on the hook of the chalkboard, and she advised Cammon to unhook Harris.  She also stated that

she did not believe Cammon's actions were intentional and that Cammon unhooked Harris from the board upon her request.  Thomas also claimed in the statement that she did not witness other children laughing at Harris, and she had not previously observed Cammon discipline Harris in this way.

As set forth in the Complaint, several of Harris' classmates who were interviewed as part of the investigation generally corroborated Harris' portrayal of the incident or provided additional facts.  However, one student's alleged statement that Thomas instructed Cammon to hang Harris on the chalkboard is contradicted by other allegations in the Complaint.

Plaintiffs further allege that the Georgia Department of Human Services found that Cammon and the teachers in Harris' class had emotionally abused him. Plaintiffs conclude that Thomas and Cammon "conspired or took actions to allow, promote, ensure, facilitate, and cover up the excessive, cruel and unduly severe punishment they inflicted on [Harris]."[2]

Plaintiffs assert that Harris suffered physical and mental pain while at the school and that both he and Davis have suffered and will continue to suffer emotionally.

---

[2] The Complaint contains numerous conclusory references to a conspiracy, but a conspiracy cause of action is not pleaded, and no factual details of the alleged conspiracy are asserted.

Thomas, Cammon and another teacher involved in the incident were ultimately terminated by the RCSD.

## III.    DISCUSSION

### A.    Legal Standard

Under the Federal Rule of Civil Procedure 12(b)(6) dismissal standard, the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement.") (quoting *Twombly*, 550 U.S. at 557) (internal punctuation omitted); *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, . . . legal conclusions without adequate factual support are entitled to no assumption of truth.") (internal punctuation and citations omitted).

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 557.  "This standard does not

require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555). *See also Twombly*, 550 U.S. at 570 (dismissing the complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678) and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

## B.   Analysis

Among several arguments, Thomas contends that Plaintiffs' claims are barred by the doctrines of official and qualified immunity.  The court addresses these arguments first.

### i.   State Law Claims:  Counts I–III[3]

Count I of the Complaint concerns "intentional, malicious [and] willful physical abuse;" Count II asserts claims for unlawful confinement and false imprisonment; and Count III relates to intentional infliction of emotional distress. The gist of these counts is that Thomas acted "in concert" with Cammon to allow or facilitate the abuse of Harris.

Thomas moves to dismiss the claims on the grounds that they are barred by the doctrine of official immunity.  Thomas asserts that Plaintiffs have not stated any *factual* allegations that she acted with malice or intent to injure, which is necessary to defeat the official immunity defense.

The constitution of the state of Georgia provides that:

> all officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.  Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability,

---

[3] Thomas contends that Plaintiffs' individual capacity claims should be deemed official capacity claims because they arise out of her position as a teacher at the RCSD.  They argue, therefore, that the claims should be dismissed on sovereign immunity grounds.  For the purposes of this Order, the Court assumes—without deciding—that the claims are properly pleaded as individual capacity claims.

and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d).[4]  In short, "a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or intent to injure."[5] *Cameron v. Lang,* 549 S.E.2d 341, 344 (Ga. 2001).

For the purposes of official immunity, "'actual malice' requires a deliberate intention to do wrong[] and denotes 'express malice or malice in fact.'"  *Daley v. Clark*, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006).  "[W]illful, wanton or reckless conduct or implied malice" does not suffice.  *Id*.  Nor does "'exhibiting a reckless disregard for human life.'"  *Id*.

In *Murphy v. Bajjani*, the court was asked to decide whether school officials were liable for not seeking emergency medical help for over forty minutes after a student was initially rendered unconscious during a fight, and

---

[4] The term "official functions" refers to "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." *Gilbert v. Richardson*, 452 S.E.2d 476, 483 (Ga. 1994).
[5] It is "well established that 'monitoring, supervising, and controlling the activities of students is a *discretionary* action protected by the doctrine of official immunity.'"  *Butler v. Doe*, 762 S.E.2d 145, 147 (Ga. Ct. App. 2014); *see also Reece v. Turner*, 643 S.E.2d 814, 817 (Ga. Ct. App. 2007) (stating that "decisions concerning the supervision of students and school personnel are considered discretionary, 'even where specific school policies designed to help control and monitor students have been violated'").

he was bleeding profusely and suffering from other visible injuries. 647 S.E.2d 54, 60 (Ga. 2007). In concluding that the claims were barred, the Georgia Supreme Court emphasized that allegations of "deliberate acts of wrongdoing done with reckless disregard for the safety of others" were not sufficient to allege the actual malice necessary to overcome official immunity. *Id*. To overcome a public employee's official immunity, a plaintiff must show "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Selvy v. Morrison*, 665 S.E.2d 401, 405 (Ga. Ct. App. 2008).

Under this standard, even violating state law or a department policy is not sufficient to pierce a public employee's official immunity shield. *See, e.g.*, *Phillips v. Hanse*, 637 S.E.2d 11, 13–14 (2006) (explaining that a violation of state law "did not constitute a 'deliberate intention to do wrong' so as to constitute 'actual malice'"). In other words, "'[t]he bar for proving malice or an intent to cause injury [in the context of official immunity] is high.'" *Reeves v. Key*, No. 5:17-CV-198 (CAR), 2017 WL 3527715, at *9–10 (M.D. Ga. Aug. 16, 2017) (finding that a school administrator was immune to suit where he held a disruptive student in "an interim control hold" for five to ten minutes). *See also Daniels v. Gordon*, 503 S.E.2d 72,

75 (Ga. Ct. App. 1998) (finding that a teacher was immune to suit because she "was simply fulfilling her discretionary tasks of monitoring, supervising and controlling the students in her class when she grasped [the student's] face to get his attention"); *Adams v. Hazelwood*, 520 S.E.2d 896, 897 (Ga. 1999) (finding that a school official who punished a student by requiring him to cut weeds with a pair of scissors was immune to suit because even "ill will" towards a student, by itself, was not sufficient to establish actual malice); *Butler v. McNeal*, 555 S.E.2d 525, 527 (Ga. Ct. App. 2001) (underscoring that malice "cannot be implied" and finding that a teacher who was accused of pulling a chair from underneath a student was "simply exercising her discretionary authority to . . . supervise the children in her school").

In applying the official immunity standard, courts in this Circuit have noted that the court's task is not to decide what the official should have done and that a finding that the official is shielded from suit by the doctrine of official immunity does not mean that he acted properly. *See, e.g., Simpson v. Coffee Cnty. Sch. Dist.*, No. 5:13-CV-32, 2016 WL 4399799, at *7 (S.D. Ga. Aug. 16, 2016) (stating that the court's "'task is not to decide, with the benefit of hindsight, what [the defendant] should have done'"). Even where

the complaint reflects a "troubling" "pattern of deliberate indifference, concealment, neglect, bureaucratic paralysis, and ignorance," the doctrine of official immunity still shields individual defendants if the "non-conclusory allegations" in the complaint fail to show that they acted with the intent to cause the specific harm suffered by the plaintiff. *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1145–46 (N.D. Ga. 2016) (dismissing claims against a special education teacher who was alleged to have pushed a severely disabled student to the ground multiple times, slammed his face into lockers almost every day, abandoned him on a school bus and deprived him of lunch for two days a week on average, among other actions).

Here, after the "labels and conclusions" in the Complaint are set aside for the purpose of ruling on Thomas' Motion to Dismiss (*Twombly*, 550 U.S. at 555), the remaining factual allegations (accepted as true and viewed in the light most favorable to Plaintiffs) reflect that:  Thomas called Cammon to the class to assist with Harris; she instructed Cammon to hang Harris on the board; she laughed as Harris hung from the board; she did not intervene to assist Harris; Cammon previously hung Harris on the board; and Harris was not taken down from the board until the principal arrived and asked

13

Cammon to do so.[6]  While the alleged actions are certainly troubling, and the Court condemns them in the strongest terms, the Court's role is only to apply the law.  Based on the reasoning of cases cited herein like *Murphy*, *Daniels* and *Adams*, the Court finds that the factual allegations against Thomas are not sufficient to support a finding that she acted with actual malice or an actual intent to cause emotional injury to Harris.

Plaintiffs' argument that malice should be implied from Thomas' actions is contrary to the law.  As the *Butler* court confirmed in its finding that a teacher who was alleged to have pulled a chair from underneath a student was merely controlling and supervising the students in the class, malice cannot be implied.  *See Butler*, 555 S.E.2d at 527.  That is the case even where the allegations reflect "deliberate acts of wrongdoing done with reckless disregard for the safety of [the plaintiff]."  *Murphy*, 647 S.E.2d at 60.  And the conclusion does not change where the defendant is accused of violating school policy or breaking the law.  *See*, *Phillips*, 637 S.E.2d at 13–14.  As such, the Court finds that the doctrine of official immunity shields

---

[6] Harris does not dispute that the allegations against Thomas in the Complaint constitute discretionary acts.

Thomas from Plaintiffs' state law claims.  Counts I through III of the

Complaint are **DISMISSED**.[7]

> ii.      **Federal Constitution Claims:  Counts IV, V and VII**[8]

Under Count IV of the Complaint, Plaintiffs allege that Thomas acted

in concert with Cammon to execute an unreasonable seizure of Harris.

Under Count V, they allege that Thomas violated Harris' due process rights.

Under Count VII, they allege that Thomas is liable for the cruel and

excessive punishment of Harris.

Thomas moves to dismiss these counts because she argues that

"[n]one of [the] allegations [in the Complaint] constitute a violation of

[Harris'] concrete and factually defined rights under federal law."  She also

---

[7] The Court does not address Plaintiffs' argument regarding sovereign immunity because it is irrelevant in light of the Court's prior dismissal of the claims against the RCSD and Plaintiffs' withdrawal of their official capacity claims against Thomas.

[8] The Complaint references the Georgia constitution in connection with the federal constitutional law counts brought pursuant to 42 U.S.C. § 1983.  However, only federal rights may be asserted in this way.  *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989) (noting that the plaintiff "must assert the violation of a federal right" in order to bring a § 1983 claim).  To the extent Plaintiffs intend to otherwise assert claims under the Georgia constitution, the Court deems such claims abandoned or waived because Plaintiffs plead no supporting factual allegations, and they make no reference to such claims in their response brief.  *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) (stating that "the failure to make arguments and cite authorities in support of an issue waives it.").

asserts that she is entitled to qualified immunity given that her alleged actions were discretionary and related to her supervision of the classroom.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012). To claim qualified immunity, a defendant must first show that he was performing a discretionary function. *Moreno v. Turner*, 572 F. App'x 852, 855 (11th Cir. 2014). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012). A plaintiff overcomes the qualified immunity defense by demonstrating that: "'(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'" *Moreno*, 572 F. App'x at 855.

**Count IV**[9]

Plaintiffs' response brief does not address this Count.  Although

Plaintiffs bear the burden of showing that the qualified immunity defense

should not apply here, their Fourth Amendment claim is not mentioned at all

in their response brief, much less sufficiently discussed to satisfy their

burden.  Therefore, the Court finds that Plaintiffs have abandoned this claim.

*See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th

Cir. 2012) (stating that "the failure to make arguments and cite authorities in

support of an issue waives it."); *Jones v. Bank of Am., N.A.*, 564 F. App'x

432, 434 (11th Cir. 2014) (agreeing with the district court's conclusion that

"when a party fails to respond to an argument or otherwise address a claim,

the [c]ourt deems such argument or claim abandoned"); *Bute v. Schuller

Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (deeming the plaintiff's

retaliation claim abandoned where she failed to respond to the defendant's

argument for dismissal of the claim).

---

[9] As with the state law claims, Plaintiffs do not dispute that Thomas' alleged actions were taken under discretionary authority.

**Count V**

Here, Plaintiffs argue only that Defendant ***Cammon*** "took away"

Harris' due process rights and that pursuant to the school's policies and

Harris' Individualized Education Program,[10] other disciplinary measures

such as parental notification or student suspension would have been more

appropriate.  Plaintiffs neither describe how ***Thomas*** violated Harris'

constitutional right nor demonstrate that such right was clearly established at

the time of the incident.  Both of these showings are required to overcome a

qualified immunity defense.  *See Moreno*, 572 F. App'x at 855.  Therefore,

Plaintiffs have not satisfied their burden in this regard.

Additionally, while the allegations of physical punishment, if such

punishment is considered corporal punishment, could generally implicate the Due

Process Clause of the Fourteenth Amendment, the Complaint is clear that

Cammon, not Thomas, administered the punishment.  Vague and conclusory

---

[10] An Individualized Education Program is a specific plan created for a student that "creates an opportunity for teachers, parents, school administrators, related services personnel, and students (when appropriate) to work together to improve educational results for children with disabilities."  UNITED STATES DEPARTMENT OF EDUCATION, https://www2.ed.gov/parents/needs/speced/iepguide/index.html (last visited on February 16, 2021).

references to a conspiracy are not sufficient to impute Cammon's actions to

Thomas.  For all of these reasons, Count IV of the Complaint fails to state a claim.

**Count VII**

Plaintiffs appear to concede that the Eighth Amendment does not apply in

the context of their claims but argue that the Court is in a "position de novo" to

allow their claims.

To the contrary, this Court is bound by the Supreme Court decision in

*Ingraham v. Wright*, which expressly "conclude[d] that when public school

teachers or administrators impose disciplinary corporal punishment, the

Eighth Amendment is inapplicable."  430 U.S. 651, 671 (1977).  The

"pertinent constitutional question is whether [Cammon's] imposition on

Harris is consonant with the requirements of due process" (*id*.), an issue that

Plaintiffs did not address.  Because Plaintiffs cannot show that Thomas

violated Harris' constitutional right, their claims under Count VII fail.

Based on the foregoing analysis, the Court finds that Counts IV, V

and VII of the Complaint are barred by the doctrine of qualified immunity

and are **DISMISSED** as a result.

iii.     **Violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Section 504") – Count VI**

Plaintiffs claim that Thomas intentionally denied Harris' rights under the ADA and Section 504.  However, as Thomas points out, these claims are not viable on their face because claims under the ADA and § 504 are improper against an individual defendant like Thomas.  *See*, *e.g.*, *Rylee v. Chapman*, No. 2:06-cv-0158, 2008 WL 3538559, at *6 (N.D. Ga. Aug. 11, 2008), *aff'd*, 316 F. App'x 901 (11th Cir. 2009) ("[I]nsofar as Plaintiffs bring claims against … individual Defendants under the ADA, those claims are due to be dismissed" because "Title II of the Disabilities Act provides a cause of action only against a 'public entity' and not an individual acting under color of state law."); *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1139-40 (N.D. Ga. 2016) (finding that the plaintiffs failed to state a claim for individual liability under the ADA because the defendant was not an employer, a private entity operating a public accommodation or an individual accused of retaliation); *Hammonds v. DeKalb Cnty.*, No. 4:16-BE-1558-M, 2017 WL 1407461, at *2 (N.D. Ala. Apr. 20, 2017) (denying a motion for reconsideration of claims against defendants in their individual capacities because "only public entities may be liable under Title II of the ADA and § 504 of the Rehabilitation Act, and any amendment of those claims asserted against the

individuals would be futile"); *J.D.P. by Pope v. Cherokee Cnty., Ga. Sch. Dist.*,

No. 1:08-cv-165, 2009 WL 10700207, at *19 (N.D. Ga. Mar. 23, 2009)

(concluding that the plaintiffs failed to state a claim because "individuals may not

be held personally liable for violating the substantive provisions of either § 504 or

the ADA").

Accordingly, Plaintiffs' claims under the ADA and Section 504 fail, and

Count VI of the Complaint is **DISMISSED**.

In sum, Counts I–III of the Complaint are dismissed on the grounds of

official immunity; Counts IV, V and VII are dismissed on the grounds of qualified

immunity; and Count VI is dismissed for failure to state a claim.[11]  Thomas'

Motion to Dismiss (ECF No. 13) is therefore **GRANTED** in its entirety, and the

Complaint is **DISMISSED**.  The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 22nd day of February, 2021.

_____

**J. P. BOULEE**
United States District Judge

---

[11] In light of the resolution of Plaintiffs' claim as set forth herein, the Court need not decide Thomas' other arguments for dismissal.